No. 25-5036

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SEXUALITY AND GENDER ALLIANCE,

*Plaintiff-Appellant*,

v.

DEBBIE CRITCHFIELD, in her official capacity as
Idaho State Superintendent of Public Instruction, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:23-cv-00315-DCN

## OPPOSITION TO AN ADMINISTRATIVE STAY
## (RELIEF REQUESTED BY AUGUST 12, 2025)

RAÚL R. LABRADOR
ATTORNEY GENERAL

OFFICE OF THE IDAHO
ATTORNEY GENERAL
700 W. Jefferson St.
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
james.craig@ag.idaho.gov
michael.zarian@ag.idaho.gov
gader.wren@ag.idaho.gov
david.myers@ag.idaho.gov

ALAN M. HURST
Solicitor General

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense

MICHAEL A. ZARIAN
Deputy Solicitor General

GADER WREN
Assistant Solicitor General

DAVID J. MYERS
Deputy Attorney General

*Counsel for Appellees*

## INTRODUCTION

The Court should deny the motion for administrative relief[1] because it is procedurally improper: movant Sexuality and Gender Alliance (**SAGA**) failed to seek relief in the district court before filing this motion, and its chief explanation for that failure—i.e., the short time before school starts—is entirely SAGA's fault.

The Court should also deny the motion on the merits. The district court correctly applied this Court's prior opinion in this case, concluding that sex-separated restroom facilities serve Idaho's interest in protecting students' privacy, are constitutional under the Equal Protection Clause, and do not violate Title IX.

## BACKGROUND

S.B. 1100 mandates that students attending Idaho public schools use restrooms and changing facilities corresponding to their biological sex, protecting student privacy and safety. Shortly after S.B. 1100 passed, SAGA filed suit and sought a preliminary injunction, arguing that S.B. 1100 violated Equal Protection and Title IX. D. Ct. Dkt. 1, 15. The district court denied the requested injunction. D. Ct. Dkt. 60.

On March 20, 2025, this Court affirmed the district court's denial of injunctive relief, *Roe v. Critchfield*, 131 F.4th 975 (9th Cir. 2025) *amended and superseded* by *Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025) (May 23, 2025), and on June 2, 2025, it issued

---

[1] This filing responds only to Appellant SAGA's request for immediate administrative relief. A response to SAGA's motion for an injunction pending appeal will follow within the ordinary briefing schedule or any expedited schedule the Court chooses to set.

1

its formal mandate. D. Ct. Dkt. 82. But SAGA did not file its motion for a preliminary injunction until July 3, 2025. D. Ct. Dkt. 86.

SAGA's motion requested relief by August 11, 2025. D. Ct. Dkt. 86 at 2. Consistent with SAGA's request, the district court issued an expedited briefing schedule, shortening Defendants' response time. D. Ct. Dkt. 87. After reviewing the papers, the district court denied SAGA's second motion for injunctive relief. D. Ct. Dkt. 106.

SAGA appealed on August 8 and filed the instant motion shortly before noon on August 11—without first seeking the same relief in the district court. D. Ct. Dkt. 107; Dkt. 4.1. The motion contains 24 pages of argument and 350 pages of record for the Court's review, and it requests relief before school starts tomorrow. Dkt. 4.1, 4.3, 4.4, 4.5.

About two and a half hours later, SAGA moved the district court for an injunction pending appeal. D. Ct. Dkt. 108. The district court has not yet ruled.

## LEGAL STANDARD

The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction. *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris*

*v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

**ARGUMENT**

## I. SAGA's Failure to Comply with FRAP 8 Disqualifies them from Obtaining an Administrative Stay.

Failure to comply with FRAP 8 is fatal to the movant's emergency motion. *Vasquez Perdomo v. Noem*, 2025 WL 2181709, at *1, n.1 (9th Cir. Aug. 1, 2025) (denying a motion for failure to comply with FRAP 8). FRAP 8(a)(1)(A) outlines that a party "must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." FRAP 8(a)(2) outlines that a motion for such relief "may" be made to the Court of Appeals if the movant shows that "moving first in the district court would be impracticable" or that "the district court denied the motion or failed to afford the relief requested . . . ."

Here, SAGA did not move the district court for relief as required by FRAP 8(a)(1). Its certificate of compliance argues that a district court motion would have been impracticable because, with the school year starting tomorrow, time did not permit the ordinary procedure. Dkt. 3.1 at 7. But if that was true, it was SAGA's own fault.

SAGA received this Court's initial opinion upholding Idaho's law on March 20. It received the Court's slightly amended final opinion on May 23, and the Court's mandate issued on June 2. And yet, for unknown reasons, SAGA did not file its new preliminary injunction motion until July 3, only 40 days before school begins on August

3

12. D. Ct. Dkt. 86. When it did so, it asked the district court for a decision by August 11—the day before the first day of school. D. Ct. Dkt. 86 at 2.

In other words, the emergency that supposedly requires immediate relief is entirely of SAGA's own making. SAGA had every opportunity—and every reason—to file its preliminary injunction motion weeks sooner, ask the district court for an earlier ruling, and leave itself time to seek relief pending appeal first in the district court and then in this Court before the school year began.

That the district court beat SAGA's deadline by four days, ruling on August 7 instead of August 11, strongly suggests that it is giving the case a high priority and would have ruled quickly on SAGA's motion for an injunction pending appeal if SAGA had bothered to file one. And yet SAGA, despite having more time than it had asked the district court to give it, still failed to file such a motion until after it had already violated FRAP 8. *Cf. Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984) ("A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action."); *Oakland Trib., Inc. v. Chron. Pub. Co. Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm").

SAGA also argues that seeking relief in the district court was impracticable because it was futile, since the district court had already denied injunctive relief twice. But this ignores the text of the rule: "'Impracticable' does not mean 'futile.'" *Vano v.*

*Ebner as Tr. for Est. of Santilli L. Grp., Ltd.*, 2018 WL 11473081, at *1 (N.D. Ill. Nov. 8, 2018). *But see Simon v. City & Cty. of S.F.*, 135 F.4th 784, 815 n.22 (9th Cir. 2025) (assuming without discussion that futility satisfies impracticability standard). Rather, "impracticable" means "not practicable; incapable of being put into practice with the available means." *Impracticable*, Dictonary.com (https://tinyurl.com/5d7fjswj); *accord Impracticable*, Merriam-Webster Online (https://tinyurl.com/mwnpucu4). SAGA was not "incapable" of seeking relief in the district court—it was perfectly capable, and the rule does not give an exception to parties who merely think that seeking relief in the district court is a waste of time.

If a party could skip the district court merely because the district court has ruled against it, then that exception to FRAP 8 would swallow the rule—after all, parties that succeed in the district court rarely need to file an appeal or seek an injunction from an appellate court. Consequently, as most courts to consider the question have held, a party's loss in the district court does not excuse it from complying with FRAP 8. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 43 (1st Cir. 2021) ("We disagree with plaintiff that the district court's rejection of plaintiff's claims on the merits suffices to show that moving first in the district court would have been impracticable."); *Bayless v. Martine*, 430 F.2d 873, 879 n.4 (5th Cir. 1970) ("It does not follow from the refusal to grant a preliminary injunction pending a trial in the court below that the district court would refuse injunctive relief pending an appeal."). *But see*

5

*Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

As SAGA acknowledges, the last time the district court denied a preliminary injunction, it still gave SAGA a 21-day restraining order so it would have time to appeal and seek an injunction from the Circuit. Dkt. 3.1 at 8. How does SAGA know that the district court would not have given it the same relief again if SAGA had only taken the time to ask?

## II. The District Court did not Abuse its Discretion when it Denied SAGA's Motion for a Preliminary Injunction.

The district court correctly found that SAGA was not likely to succeed on the merits of its claims. Just as with SAGA's first motion for a preliminary injunction, the district court concluded that S.B. 1100's restroom requirement classified on the basis of sex and was therefore subject to intermediate scrutiny. D. Ct. Dkt. 106. Consistent with this Court's opinion in *Roe*, 137 F.4th at 923, the district court acknowledged that S.B. 1100 also classifies on the basis of transgender status. D. Ct. Dkt. 106.

S.B. 1100 restroom requirement is substantially related to Idaho's important interest in protecting individuals' right to bodily privacy. As SAGA did not dispute that "privacy is an important government objective or that the Ninth Circuit has long supported that concept," the district court analysis was limited to whether S.B. 1100 was substantially related to that interest. D. Ct. Dkt. 106 at 13.

The district court concluded S.B. 1100's restroom requirement easily passed intermediate scrutiny. *Id.* at 15 (The "State's privacy justification is easily corroborated by common experience and circuit precedent"). The district court explained that "[p]rivacy is not limited to obscuring the visual line of sight of others when a person is *relieving* themselves in a restroom stall." And "restrooms are not used simply to relieve oneself" and "[p]eople often use the common areas of a restroom (as well as a stall) to change items of clothing or undertake other personal hygiene duties which implicate privacy concerns as well." *Id.* Thus, the district court concluded S.B. 1100's restroom requirement was substantially related to Idaho's important government interest and found that SAGA was not likely to succeed on the merits of its Equal Protection claim.

The district court similarly found that SAGA was not likely to succeed on the merits of its Title IX claim. The district court reaffirmed its previous finding that S.B. 1100's restroom requirement does not violate Title IX because Title IX's regulations expressly permit separate toilet facilities for the sexes. *Id.* at 17–18 (citing 34 C.F.R. § 106.33). The district court further found that SAGA was not likely to succeed on the merits of its Title IX claim because, as outlined in *Roe*, Idaho did not have clear notice that Title IX prohibited segregating restrooms based on sex rather than subjective gender identity. *Id.* at 20.

If the Court reaches the merits, it should adopt the district court's conclusion that SAGA is not likely to prevail.

### III. SAGA Will Not Suffer Irreparable Harm as Boise High School Allows Any Student to Use Single-Occupancy Restrooms.

SAGA argues that without an injunction its members will suffer irreparable harm because, if they are required to use a restroom that does not comply with their gender identity, its members' mental health will suffer. Dkt. 4.1 at 26. But SAGA ignores a critical fact—Boise High School has a number of single-occupancy restrooms that may be accessed by any student. D. Ct. Dkt. 90-2 ¶ 5. Therefore, SAGA members are not required to use a restroom inconsistent with their gender identity. *Id.* And using a single-occupancy restroom does not "out" transgender students because nontransgender students and transgender students alike use those restrooms. *Id.* ¶ 6.

Perhaps more importantly, single-occupancy restrooms provide substantial benefit for minors with gender dysphoria or who are transitioning. D. Ct. Dkt. 90-5 ¶¶ 35-40. This is because single-occupancy restrooms provide "a protected place . . . for toileting, self-care, and to emotionally regroup." *Id.* ¶ 36. Single-occupancy restrooms also reduce the risk of bullying or negative interaction with peers. *Id.* ¶¶ 35, 40. For these reasons, some medical experts believe that single-occupancy restrooms are the best option for transgender students. *Id.* ¶ 48.

### CONCLUSION

SAGA has failed to comply with FRAP 8 and failed to show it is entitled to an injunction. This Court should deny administrative relief.

Dated: August 11, 2025          Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

/s/ Alan M. Hurst

ALAN M. HURST
Solicitor General

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense

MICHAEL A. ZARIAN
Deputy Solicitor General

GADER WREN
Assistant Solicitor General

DAVID J. MYERS
Deputy Attorney General

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Response in Opposition to Motion complies with the limitation of Circuit Rules 32-3 and 27-1 because it contains 2,052 words. This Response in Opposition to Motion complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

/s/ *Alan M. Hurst*
Alan M. Hurst

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/ *Alan M. Hurst*
Alan M. Hurst