No. 25-5036
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SEXUALITY AND GENDER ALLIANCE,
*Plaintiff-Appellant*,

v.

DEBBIE CRITCHFIELD, in her official capacity as
Idaho State Superintendent of Public Instruction, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:23-cv-00315-DCN

## STATE APPELLEES' RESPONSE IN OPPOSITION TO MOTION FOR AN INJUNCTION PENDING APPEAL

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN M. HURST
Solicitor General
MICHAEL A. ZARIAN
Deputy Solicitor General
GADER WREN
Assistant Solicitor General

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense
DAVID J. MYERS
Deputy Attorney General

OFFICE OF THE IDAHO
ATTORNEY GENERAL
700 W. Jefferson St.
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov

MATHEW W. HOFFMANN
ALLIANCE DEFENDING
FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
mhoffmann@ADFlegal.org

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING
FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

JOHN J. BURSCH
LINCOLN DAVIS WILSON
NATALIE D. THOMPSON
ALLIANCE DEFENDING
FREEDOM
440 First Street, NW, Suite
600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwison@ADFlegal.org
nthompson@ADFlegal.org

*Counsel for State Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION .............................................................................................1

BACKGROUND ...............................................................................................2

LEGAL STANDARD .........................................................................................4

I.   Under *Skrmetti*, Rational Basis Review Applies to S.B. 1100. ....................................4

II.  SAGA is not Likely to Succeed on its Equal-Protection Claim. ..............................7

    A.  S.B. 1100 easily satisfies rational-basis review....................................................7

    B.  S.B. 1100's sex-designated restroom requirement also survives intermediate scrutiny. ............................................................................8

III. SAGA is not Likely to Succeed on Its Title IX Claim. .............................................15

    A.  Title IX Does Not Give Clear Notice of Any Prohibition on Sex-designated Restrooms. ........................................................................16

    B.  Title IX, its statutory rule of construction, and its implementing regulations allow sex-designated restrooms. ..............................................16

IV. The Remaining Injunction Factors Favor Defendants. .........................................21

CONCLUSION ..............................................................................................22

i

# TABLE OF AUTHORITIES

## CASES

*Adams v. Sch. Bd. Of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022).................................................................10, 19, 20

*Bridge ex rel. Bridge v. Okla. State Dep't of Educ.*,
711 F. Supp. 3d 1289 (W.D. Okla. 2024)...............................................14

*Byrd v. Maricopa Cnty. Sheriff's Dep't.*,
629 F.3d 1135 (9th Cir. 2011)...............................................................8, 11, 12

*CC v. AT&T Inc.*,
562 U.S. 397 (2011)...............................................................................20

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986).................................................................................15

*D.P. ex rel A.B. v. Mukwonago Area Sch. Dist.*,
2025 WL 1794428 (7th Cir. June 30, 2025).........................................10

*Department of Ed. v. Louisiana*,
603 U.S. 866 (2024)...............................................................................17

*Doe v. Bibb Cnty. Sch. Dist.*,
83 F. Supp. 3d 1300 (M.D. Ga. 2015)...................................................13

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022)..................................................................17

*Dubin v. United States*,
599 U.S. 110 (2023)...............................................................................19

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012).................................................................4

*F.C.C. v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993)...............................................................................7

*Feldman v. Ariz. Sec'y of State's Off.*,
843 F.3d 366 (9th Cir. 2016).................................................................4

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
822 F.3d 709 (4th Cir. 2016) ........................................................................10

*Geduldig v. Aiello*,
417 U.S. 484 (1974) ........................................................................................5

*Grove City Coll. v. Bell*,
465 U.S. 555 (1984) ......................................................................................18

*Hart v. Att'y Gen. of Md.*,
2024 WL 4201418 (D. Md. Sept. 16, 2024) ................................................13

*Hecox v. Little*,
79 F.4th 1009 (9th Cir. 2023) ......................................................................12

*Hutton v. State*,
190 N.E.3d 413 (Ind. Ct. App. 2022) ..........................................................13

*In re Commitment of Thedford*,
2023 WL 107121 (Tex. App. 2023) ..............................................................13

*Jacobs v. Clark Cnty. Sch. Dist.*,
526 F.3d 419 (9th Cir. 2008) ..........................................................................9

*L.W. ex rel. Williams v. Skrmetti*,
83 F.4th 460 (6th Cir. 2023) ..........................................................................6

*Lincoln Cnty. Sch. Dist. v. Doe*,
749 So. 2d 943 (Miss. 1999) ........................................................................14

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ..................................................................................18

*Maryland v. King*,
567 U.S. 1301 (2012) ....................................................................................22

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ......................................................................................19

*Parents for Priv. v. Barr*,
949 F.3d 1210 (9th Cir. 2020) ......................................................................22

*People v. Waqa*,
309 Cal. Rptr. 3d 633 (Cal. App. Ct. 2023) ................................................13

*Roe v. Critchfield,*
131 F.4th 975 (9th Cir. 2025)................................................................3

*Roe v. Critchfield,*
2023 WL 6690596 (D. Idaho Oct. 12, 2023) ........................................2, 9, 10

*SAGA v. Critchfield,*
2025 WL 2256884 (D. Idaho Aug. 7, 2025) ..............................3, 8, 11, 12, 21

*Sepulveda v. Ramirez,*
967 F.2d 1413 (9th Cir. 1992)................................................................11

*State v. Brown,*
164 So. 3d 395 (La. App. Ct. 2015) .......................................................13

*State v. Pearson,*
551 S.E.2d 471 (N.C. Ct. App. 2001) ...................................................13

*State v. Pickens,*
893 S.E.2d 194 (N.C. 2023) .................................................................13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
143 S. Ct. 2141 (2023) ..........................................................................7

*United States v. Skrmetti,*
145 S. Ct. 1816 (2025) ..............................................................4, 5, 6, 7

*United States v. Virginia,*
518 U.S. 515 (1996) ............................................................................1, 8

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
858 F.3d 1034 (7th Cir. 2017)................................................................10

**STATUTES**

34 C.F.R. § 106.33 .........................................................................17, 18

42 U.S.C. § 1396n .................................................................................20

42 U.S.C. § 1686 ...............................................................17, 18, 19, 20, 21

45 CFR § 86.33 .......................................................................................17

Idaho Code § 33-6701 ............................................................................2

## OTHER AUTHORITIES

Briana Oser, *Young Girl is Raped in School Bathroom by Transgender Peer*, Washington Examiner (June 20, 2023) ..............................................................14

Charles Adside, III, *The Caitlyn Dilemma: Transgender Bathroom Access and Unavoidable Constitutional Difficulties*, 37 Quinnipiac L. Rev. 457 (2019)........................................ 2, 14

*Facility*, Merriam-Webster ............................................................................20

Kevin Stuart & DeAnn Barta Stuart, *Behind Closed Doors: Public Restrooms and the Fight for Women's Equality*, 24 Tex. Rev. L. & Pol. 1 (2019).......................................................9

Melody Wood, *6 Men Who Disguised Themselves as Women to Access Bathrooms*, The Daily Signal (June 3, 2016) .........................................................................14

Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869-1932*, 48 J. of Soc. Hist. 264 (2014) ...............................................................................9

Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post (Apr. 7, 1975) ....................................................................................10

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ..............................18

W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227 (2018)..........................................................9

### INTRODUCTION

Biological sex is not an empty label. Real physiological differences exist between men and women. These differences give rise to privacy and safety interests in private spaces where individuals perform bodily functions, partially or fully undress, and rightly expect to encounter only those of the same sex. Thus, sex-designated restrooms are nearly universal and have existed since time immemorial. To protect bodily privacy and to ensure women's safety, the Idaho Legislature passed S.B. 1100, which requires K-12 students in public schools to use multi-occupancy restrooms that correspond to their biological sex, while allowing for single-user restroom accommodations.

The need for S.B. 1100 is captured by the horrific experience of A.C., a female student at Boise High School. A.C. was using the girls' restroom when she heard what sounded like male masturbation noises in the adjacent stall and saw two black shoes pointed toward her. That traumatizing incident left A.C. feeling unsafe at Boise High School. As a result, A.C. plans to attend a different school for the 2025-2026 school year.

Recognizing the real differences between males and females, both the Constitution and Title IX permit sex-designated restrooms in K-12 public schools—or anywhere else. The Equal Protection Clause prohibits discrimination based on stereotypes, not distinctions based on the biological differences between the sexes, which are "cause for celebration." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Title IX prohibits sex discrimination; it does not mandate sex blindness, and it specifically permits sex-designated toilet facilities.

Although it is only subject to rational-basis review, S.B. 1100 survives even heightened scrutiny. Sex-designated restrooms advance Idaho's important interests in protecting the safety and bodily privacy of developing minors. They provide privacy to girls and boys alike and protect girls from sexual advances that could otherwise occur in private spaces. This is especially true where restroom stalls have gaps, like some of those at Boise High School, which provide no sound barrier and allow those outside to see into the stall even when the door is locked.

## BACKGROUND

S.B. 1100 mandates that Idaho K-12 public schools separate restrooms by biological sex, protecting student privacy and safety. Idaho Code § 33-6701(2); *see also* Charles Adside, III, *The Caitlyn Dilemma: Transgender Bathroom Access and Unavoidable Constitutional Difficulties*, 37 Quinnipiac L. Rev. 457, 483 (2019) (sex-designated-restroom laws "are mechanisms for the states to protect individual privacy" and "[a]nti-transgender animus does not inspire" such laws). SAGA filed suit and sought a preliminary injunction, arguing that S.B. 1100 violated the Equal Protection Clause and Title IX. D. Ct. Dkt. 1, 15. The district court denied the requested injunction. *Roe v. Critchfield*, 2023 WL 6690596, at *1 (D. Idaho Oct. 12, 2023). SAGA appealed, and this Court granted administrative relief pending appeal. Order, *Roe v. Critchfield*, No. 23-2807 (9th Cir. Oct. 26, 2023) ECF No. 11.1.

On March 20, 2025, this Court affirmed the district court's denial of injunctive relief, *Roe v. Critchfield*, 131 F.4th 975 (9th Cir. 2025), *amended and superseded by Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025) (May 23, 2025), and on June 2, 2025, it issued the mandate. D. Ct. Dkt. 82.

SAGA waited until July 3 to seek a preliminary injunction challenging S.B. 1100's sex-designated restroom requirement. D. Ct. Dkt. 86. The district court again denied SAGA's preliminary-injunction motion. In doing so, the district court relied heavily on its previous ruling and this Court's decision in *Roe. See generally SAGA v. Critchfield*, 2025 WL 2256884 (D. Idaho Aug. 7, 2025).

Because *Roe* held that protecting students' bodily privacy is an important state interest, 137 F.4th at 924, the district court's equal-protection analysis focused on whether a sex-designated restroom policy is substantially related to that interest. *SAGA*, 2025 WL 2256884 at *6-8. It is, as the district court found. *Id.* The court also rejected SAGA's Title IX claim because implementing regulations expressly permit separate toilet facilities and Idaho lacked clear notice that Title IX prohibited sex-designated restrooms as applied to transgender students. *Id.* at *9-11. Finally, the court concluded SAGA's arguments were "deficient on the remaining [preliminary injunction] factors" and denied its preliminary-injunction motion. *Id.* at *11-12.

SAGA appealed and requested administrative relief and an injunction pending appeal from this Court and the district court. Dkt. 4.1; D. Ct. Dkt. 108. The district

court denied SAGA's motion, D. Ct. Dkt. 110, and this Court denied SAGA's motion for temporary administrative relief. Dkt. 17.1.

## LEGAL STANDARD

The standard for evaluating an injunction pending appeal is similar to the standard for evaluating a request for a preliminary injunction. *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

## ARGUMENT

### I. Under *Skrmetti*, Rational Basis Review Applies to S.B. 1100.

In *Roe*, this Court concluded that S.B. 1100 classifies based on sex and transgender status and then applied heightened scrutiny. 137 F.4th at 923. *Skrmetti* abrogated that holding. In *United States v. Skrmetti*, a Tennessee statute prohibited puberty blockers and hormone therapy on minors—no matter which sex—if used to "identify . . . inconsistent with the minor's sex." 145 S. Ct. 1816, 1831 (2025) (cleaned up). The Court clarified that a statute's "mere reference to sex" does not trigger heightened scrutiny, and rejected the challengers' contention that heightened scrutiny is triggered in contexts "uniquely bound up in sex." *Id.* at 1829. The Court reasoned

4

that the law did "not prohibit conduct for one sex that it permit[ted] for the other." *Id.* Rather, the statute classified based on medical treatment. *Id.* at 1830-31.

Next, *Skrmetti* held that the statute did not classify based on transgender status as it did "not exclude any individual from medical treatments on the basis of transgender status but rather remove[d] one set of diagnoses," like gender dysphoria, "from the range of treatable conditions." *Id.* at 1833-34. And any individual— transgender or not—could receive medical treatment for other conditions, like precocious puberty. *See id.*

The Court relied on *Geduldig v. Aiello,* where a state insurance program excluded coverage for certain disabilities resulting from pregnancy. 417 U.S. 484, 486 (1974). In doing so, the program separated potential recipients into two groups: "pregnant women and nonpregnant persons." *Id.* at 496 n.20. "Because women fell into both groups," there was a "lack of identity" between sex and the program's exclusions. *Skrmetti*, 145 S. Ct. at 1833 (first quote); *Geduldig* 417 U.S. at 496, & n.20 (second quote). Thus, "the program did not discriminate against women as a class." *Skrmetti*, 145 S. Ct. at 1833.

Like the program in *Geduldig,* the Tennessee statute "divides minors into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Skrmetti*, 145 S. Ct. at 1833. The first group contained only transgender-identifying individuals, but the second included transgender-identifying and

5

nontransgender-identifying individuals. *Id.* "Thus, although only transgender individuals seek treatment for gender dysphoria, gender identity disorder, and gender incongruence—just as only biological women can become pregnant—there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.*

SAGA discounts *Skrmetti* because it involved different facts and a different law. Dkt. 4.1 at 13. But Tennessee's statute and S.B. 1100 operate the same way for constitutional purposes. Like the statute in *Skrmetti*, S.B. 1100's restroom requirement protects privacy interests that are "uniquely bound up in sex," and it does not proscribe conduct if engaged in by one sex, but not the other. *Skrmetti*, 145 S. Ct. at 1831. So under *Skrmetti*, S.B. 1100's mere reference to sex does not mean that it classifies based on sex. And because S.B. 1100 recognizes two groups—male and female—that both contain transgender individuals, there is a "lack of identity" between transgender status and S.B. 1100's requirements. *See Skrmetti*, 145 S. Ct. 1833. So S.B. 1100 does not classify based on transgender status either.

*Bostock* does not help SAGA's argument. *Contra* Dkt. 4.1 at 13. *Bostock*'s "text-driven," but-for causation analysis is based on Title VII and is inapplicable to the Equal Protection Clause. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484 (6th Cir. 2023), *aff'd*, 145 S. Ct. 1816. Title VII and the Equal Protection Clause use different language, and it is "implausible on its face" "[t]hat such differently worded provisions . . . should

6

mean the same thing." *Id.* (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2220 (2023) (Gorsuch, J., concurring)).

But even if *Bostock*'s but-for causation analysis applied, *Bostock* "does not alter" the "analysis" because S.B. 1100 is not a sex-based classification. *Skrmetti*, 145 S. Ct. at 1834. In *Bostock*, the employer "penalized the male employee for a trait (attraction to men) that it tolerates" in females. *Skrmetti*, 145 S. Ct. at 1835. S.B. 1100 does not "penalize" anyone—it treats the sexes equally, with each provided its own sex-designated restrooms. Sex is not a but-for cause of any burden or disadvantage, and as in *Skrmetti*, *Bostock* doesn't apply. Thus, under *Skrmetti*'s framework, S.B. 1100 does not discriminate against sex or transgender status and is subject only to rational basis review.

## II. SAGA is not Likely to Succeed on its Equal-Protection Claim.

### A. S.B. 1100 easily satisfies rational-basis review.

Because S.B. 1100 does not discriminate based on sex or transgender status, it triggers rational-basis review. *Skrmetti*, 145 S. Ct. at 1831-35. To succeed on its equal-protection claim, SAGA must show that S.B. 1100 lacks any rational relationship to a legitimate government interest. But S.B. 1100 is entitled to a "strong presumption of validity," and "legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993).

"[P]rotecting the privacy and safety of all students" is an "important" government interest. *Roe*, 137 F.4th at 923. This important interest advances men's and

women's constitutional right to bodily privacy—which includes the right to shield one's unclothed body from the opposite sex. *Byrd v. Maricopa Cnty. Sheriff's Dep't.*, 629 F.3d 1135, 1141 (9th Cir. 2011). S.B. 1100's sex-designation requirement is rationally related to these interests. Even if SAGA members always use restroom stalls, that does not protect the sex-specific privacy interests of all students. *SAGA*, 2025 WL 2256884 at *7-8. Gaps around and under stall doors and walls mean there is no sound barrier and an imperfect visual barrier. D. Ct. Dkt. 90-2 ¶¶ 10-11. Barring access by the opposite sex is a layer of protection, and that is rationally related to Idaho's interest in protecting individuals' privacy and safety.

### B. S.B. 1100's sex-designated restroom requirement also survives intermediate scrutiny.

Even applying heightened scrutiny, the district court correctly rejected SAGA's challenge. *SAGA*, 2025 WL 2256884 at *7-8. A law survives intermediate scrutiny if it "serves important governmental objectives" and is "substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 524 (1996) (cleaned up). Intermediate scrutiny does not require "the least restrictive means or the means most narrowly tailored to achieve the government's interest." *Roe*, 137 F.4th at 926. And where the "legislative judgment" is "neither novel nor implausible," the "quantum of empirical evidence" is low. *Id.* at 925.

Idaho has important interests in "promoting safety" and "protecting students' bodily privacy," and sex-designated restrooms are substantially related to those

interests. *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435 (9th Cir. 2008) (first quote); *Roe*, 137 F.4th at 924-25 (second quote).

### 1. Sex-designated restrooms have long existed and advance the government's important interest in protecting bodily privacy.

"[S]ex-separation in bathrooms . . . preceded the nation's founding," W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227, 229 (2018), and were common during Reconstruction. Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869-1932*, 48 J. of Soc. Hist. 264 (2014). As the district court found, "it does not take a court to acknowledge what most people inherently recognize: a desire for bodily privacy in restrooms (and like spaces) is rational because one's body is *private*" and "is based upon the inherent differences between male and female bodies." *Roe*, 2023 WL 6690596, at *1, *aff'd* 137 F.4th 912 (original emphasis).

Separating restrooms by sex has provided significant protection for women. Requiring sex-specific restrooms was "among the earliest state-wide attempts to protect women from workplace sexual harassment," Carter, *supra*, at 279, and it was a victory in the women's rights movement. Kevin Stuart & DeAnn Barta Stuart, *Behind Closed Doors: Public Restrooms and the Fight for Women's Equality*, 24 Tex. Rev. L. & Pol. 1, 28-29 (2019). As Justice Ginsburg wrote in 1975, "[s]eparate places to disrobe, sleep, [and] *perform personal bodily functions* are permitted, in some situations required, by regard for

individual privacy." Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post at A21 (Apr. 7, 1975) (emphasis added).

Against this historical backdrop, the Eleventh Circuit explained why designating restrooms by sex complies with equal protection. *Adams v. Sch. Bd. Of St. Johns Cnty.*, 57 F.4th 791, 800-08 (11th Cir. 2022) (en banc). Such restrooms advance the important interest in "protecting students' privacy in school bathrooms" because they allow students to "shield their bodies from the opposite sex."[1] *Id.* at 803, 805. The Fourth and Seventh circuits disagree with *Adams*, but those pre-*Skrmetti* cases failed to account for first principles of constitutional interpretation. *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709 (4th Cir. 2016); *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1038 (7th Cir. 2017). Notably, the Seventh Circuit is now considering whether *Skrmetti* overruled *Whitaker*. Order, *D.P. ex rel A.B. v. Mukwonago Area Sch. Dist.*, 2025 WL 1794428, at *1 (7th Cir. June 30, 2025).

SAGA's repeated argument that transgender-identifying students have used opposite sex restrooms "without incident," *e.g.*, D. Ct. Dkt. 1 at 16, 20, misses the point. As the district court held, "[t]he issue is not whether any transgender student has affirmatively done anything—good, bad, or otherwise—to another student." *Roe*, 2023 WL 6690596 at *10. Rather, "[t]he issue is whether a student must, against his or her

---

[1] *Skrmetti* abrogated *Adam*'s conclusion that sex-separated restrooms classify on the basis of sex.

wishes, be forced to change (or undertake other private duties) in the presence of someone of the opposite sex—even if the person of the opposite sex is doing nothing invasive, dangerous, or threatening." *Id.*

### 2. Sex-designated restrooms are substantially related to Idaho's important interests.

Sex-designated restrooms protect students' bodily privacy and promote safety. Without them, students could be subjected to sexual harassment, have their bodies exposed to the opposite sex, and risk exposure to the private parts and bodily functions of those of the opposite sex. Experience has shown that these threats are real, not hypothetical.

*i. Sex-designated restrooms protect bodily privacy.*

Individuals have a constitutional right to bodily privacy. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). "[S]hield[ing] one's unclothed figure from the view of strangers, and *particularly strangers of the opposite sex*, is impelled by elementary self-respect and personal dignity." *Byrd*, 629 F.3d at 1141 (emphasis added). A policy that reduces this risk of exposure is substantially related to the government's important interest in protecting bodily privacy. *Roe*, 137 F.4th at 924-25.

This Court has already affirmed the state's important interests in promoting student safety and protecting students' bodily privacy. *Roe*, 137 F.4th at 924. In restrooms, that interest "is not limited to individuals who are in the stalls." *SAGA*, 2025 WL 2256884 at *7-8. The district court thus followed this Court's ruling that

11

"'bathrooms by their very nature implicate important privacy interest[s]' because unquestionably 'the functions of the bathroom are intended to be private.'" *Id.* at *7 (quoting *Hecox v. Little*, 79 F.4th 1009, 1025 (9th Cir. 2023), *opinion withdrawn*, 99 F.4th 1127 (9th Cir. 2024)).

Privacy concerns exist regardless of stall doors. Some stalls at Boise High School have gaps that allow those outside the stall to see inside the stall even when the stall door is closed and locked. D. Ct. Dkt. 90-2 ¶ 10 & Ex. B. And without sex-designated restrooms, students are at risk of exposing their bodies and private actions to those of the opposite sex—the exact exposure that the right to bodily privacy most protects. *Byrd*, 629 F.3d at 1141. And this exposure risk is particularly damaging for high school girls who use the restroom during their menstrual cycle. D. Ct. Dkt. 90-5 ¶¶ 12-17.

Even if stalls provided complete visual and sound privacy, not all privacy concerns are resolved. As the district court noted, "restrooms are not used simply to relieve oneself" and "[p]eople often use the common areas of a restroom (as well as a stall) to change items of clothing or undertake other personal hygiene duties which implicate privacy concerns as well." *SAGA*, 2025 WL 2256884 at *7. SAGA argues that this conclusion was "unsupported and insufficient to carry Defendants' burden under heightened scrutiny." Dkt. 4.1 at 17. But under heightened scrutiny, "[t]he quantum of empirical evidence needed . . . will vary up or down with the novelty and plausibility of the justification raised." *Roe*, 137 F.4th at 925 (cleaned up). That some students use the

12

common areas of a restroom to change clothes or undertake other personal hygiene matters is not novel. So the required "quantum of empirical evidence" is very low. *See id.* Thus, SAGA's argument is unavailing.

*Roe* held that SAGA did not show a likelihood of success on the merits concerning locker rooms and showering facilities because students may at times expose their bodies to those of the opposite sex. *Id.* at 925. By the same logic, SAGA cannot meet its burden with respect to restrooms because students also risk exposing their bodies to those of the opposite sex. SAGA thus cannot show a likelihood of success on the merits of its equal-protection claim.

ii.   *Sex-designated restrooms prevent sexual harassment and assault.*

It is no secret that crimes are committed against women and adolescents in public restrooms. *See, e.g., State v. Brown*, 164 So. 3d 395, 397 (La. App. Ct. 2015) (attempted forcible rape against a 13-year-old girl in public library restroom).[2] The same is true of restrooms at public schools for children. *Doe v. Bibb Cnty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1302 (M.D. Ga. 2015) (high-school girl assaulted by multiple male students in girls'

---

[2] *See also Hart v. Att'y Gen. of Md.*, 2024 WL 4201418, at *2 (D. Md. Sept. 16, 2024) (female college student raped three times in college-campus restroom); *State v. Pickens*, 893 S.E.2d 194, 359 (N.C. 2023) (teacher sexually assaulted female middle school student in school restroom); *People v. Waqa*, 309 Cal. Rptr. 3d 633, 639 (Cal. App. Ct. 2023) (woman raped in public restroom); *In re Commitment of Thedford*, 2023 WL 107121, at *1 (Tex. App. 2023) (9-year-old girl raped in a McDonald's restroom); *Hutton v. State*, 190 N.E.3d 413, 414 (Ind. Ct. App. 2022) (male groped woman in women's restroom); *State v. Pearson*, 551 S.E.2d 471, 480 (N.C. Ct. App. 2001) (man secretly peeped at a woman occupying a women's restroom stall).

restroom); *Lincoln Cnty. Sch. Dist. v. Doe*, 749 So. 2d 943, 946 (Miss. 1999) (girl with disabilities raped in her school restroom by male student). Sex-designated restrooms mitigate the risk of crime, including sex crimes, against women and girls. *See Bridge ex rel. Bridge v. Okla. State Dep't of Educ.*, 711 F. Supp. 3d 1289, 1296-97 (W.D. Okla. 2024) (concluding gender-neutral multiple-occupancy restrooms at schools pose "major safety concern[s]").

Complete access to restrooms invites danger. Schools cannot realistically "require an individual to present documentation proving they have gender dysphoria [or are transgender] before using the restroom." Adside, 37 Quinnipiac L. Rev. at 484. This "arguably tempt[s] social predators, like rapists, pedophiles, voyeurists, or thieves to exploit relaxed bathroom policies to invade these spaces"—potentially subjecting women and girls to sex crimes. *Id.*

These concerns are real. In New Mexico, a 12-year-old girl was raped by a transgender classmate in the girls' restroom at school. Briana Oser, *Young Girl is Raped in School Bathroom by Transgender Peer*, Washington Examiner (June 20, 2023), https://tinyurl.com/3rr237a2. In Virginia, a man dressed as a woman gained access to the women's restroom and took pictures of a 5-year-old while she used the neighboring restroom stall. Melody Wood, *6 Men Who Disguised Themselves as Women to Access Bathrooms*, The Daily Signal (June 3, 2016), https://tinyurl.com/yv678maf. And, at Boise High School, while this Court's previous injunction was in place, A.C. heard the

sound of a transgender student (a biological male) masturbating, with his feet pointed toward her, in the adjacent girls' restroom stall. D. Ct. Dkt. 90-1 ¶¶ 6-7. This experience could have been prevented by S.B. 1100.[3]

As *Roe* stated, "harm need not have occurred before a legislature can act." 137 F.4th at 925. Given the cases involving women and girls being sexually assaulted in restrooms across the country, and A.C.'s experience, the Idaho Legislature may act to protect students in Boise High School's restrooms. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986) (locality could "rely on the experiences of . . . other cities . . . in enacting its adult theater zoning ordinance"). For these reasons, S.B. 1100's restroom requirement is substantially related to Idaho's interest in promoting student safety and SAGA cannot show a likelihood of success on the merits.

## III. SAGA is not Likely to Succeed on Its Title IX Claim.

This Court has already rejected SAGA's Title IX claim and should reject it again for two reasons. First, as *Roe* held, the clear-notice rule applies as to restrooms, as well as other private spaces, and if SAGA were right about Title IX, Idaho lacked fair notice. 137 F.4th at 929. Second, Title IX's nondiscrimination principle, statutory rule of

---

[3] SAGA disputes A.C.'s experience and suggests the transgender student was "self-stimulating" or "stimming," not masturbating. Dkt. 4.1 at 14, n.2. Even if true, the State has an important interest in protecting privacy and preventing such occurrences, and S.B. 1100 does just that.

construction, and implementing regulations have always permitted sex-designated restrooms, so S.B. 1100 cannot violate Title IX.

### A. Title IX Does Not Give Clear Notice of Any Prohibition on Sex-designated Restrooms.

This Court has noted that SAGA raises an "unusual" Title IX claim." *Roe*, 137 F.4th at 929 n.11. After all, the statute "appears to affirmatively authorize" the sex-designated restrooms that SAGA challenges. *Id.* As this Court has acknowledged, "from the time of the enactment of Title IX and its implementing regulations, the scheme has authorized schools to maintain sex-segregated facilities." *Roe*, 137 F.4th at 929. That means SAGA is not likely to succeed. Spending-power legislation, like Title IX, operates like a "contract," meaning that recipients, like Idaho, must "voluntarily and knowingly" accept conditions on funding. *Id.* at 929. Idaho could not have known that sex-designated restrooms—what Title IX and its regulations authorize (*infra* Section III.B)—in fact violate the statute. SAGA's unusual claim is unlikely to succeed.

### B. Title IX, its statutory rule of construction, and its implementing regulations allow sex-designated restrooms.

SAGA's argument relies on a flawed premise—that *Bostock* applies to school restrooms through Title IX. *See* Dkt. 4.1. at 10, 19-20. Yet SAGA doesn't dispute the biological binary definition of "sex." *See id.* at 19. It also doesn't (and cannot) dispute that Title IX's longstanding regulations allow "separate toilet, locker room, and shower facilities" for the sexes. *See id.* at 20. Even so, it insists that a law doing just that "is clearly discrimination on the basis of sex." *Id.*

16

While this Court has previously applied *Bostock* to Title IX in other contexts, *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022), the Supreme Court has recently indicated *Bostock*'s reasoning likely does not extend to Title IX. *Department of Ed. v. Louisiana*, 603 U.S. 866, 867 (2024) (per curiam). And even if it did, this Court has recognized that "*Bostock* did 'not purport to address bathrooms, locker rooms, or anything else of the kind.'" *Roe*, 137 F.4th at 928 (quoting *Bostock*, 590 U.S. at 681). Neither has this Court extended *Bostock*'s logic to those sensitive spaces. *Contra* Dkt. 4.1 at 19. And *Bostock* cannot apply to school restrooms. *Bostock*'s text-driven analysis is inapplicable where Title IX and its regulations permit sex-designated restrooms.

A longstanding regulation allows "separate toilet, locker room, and shower facilities on the basis of sex." *See* 45 CFR § 86.33 (now 34 C.F.R. § 106.33). Indeed, this regulation cited § 1681(a) as its authority, not § 1686—Title IX's living-facilities provision. So discrimination "on the basis" of sex in § 1681(a) cannot preclude providing "separate toilet . . . facilities." As this Court recognized about restrooms, "in 1972 the separation of these facilities on the basis of sex was so assumed that it did not merit special mention in the text of the statute." *Roe*, 137 F.4th at 930 n.15. In 1972 (and today), sex nondiscrimination does not demand sex blindness in private spaces like restrooms. *Id.* at 930 ("We do not see a contradiction between Title IX and § 106.33 . . . ."). So S.B. 1100's sex-specific restroom requirement is not sex

17

discrimination under Title IX. SAGA's counter-reading would put the regulation at odds with § 1681(a) and require the regulation's invalidation.

In *Roe*, this Court did not reject this "argument." *Contra* Dkt. 4.1 at 20. Quite the opposite, it said the restroom "regulation works in tandem with § 1681's antidiscrimination mandate, requiring that equivalent facilities must be provided where funding recipients choose to maintain sex-segregated facilities." *Roe*, 137 F.4th at 930. And courts should not discount regulations, like § 106.33, that were "issued roughly contemporaneously with [Title IX's] enactment" and have "remained consistent over time." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024). Indeed, courts recognize that the 1975 Title IX regulations, in particular, "accurately reflect congressional intent." *Grove City Coll. v. Bell*, 465 U.S. 555, 568 (1984).[4]

Another provision, 42 U.S.C. § 1686, confirms that sex-specific restrooms don't violate Title IX. *Contra* Dkt. 4.1 at 24. Section 1686 clarifies the meaning of the entire statute, saying Title IX cannot "be construed" to prohibit "separate living facilities for the different sexes." Congress titled § 1686 an "[i]nterpretation" principle. *Id.*; *see* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 221-24 (2012) (explaining title-and-headings canon). In this respect, § 1686 acts as an interpretation of, not an exception to, § 1681(a) and "reinforces what the text's nouns and verbs independently

---

[4] As SAGA concedes, any regulation must be compatible "with its own implementing statute"—otherwise, there would be "an obvious" separation-of-powers "problem." Dkt. 4.1 at 20. And SAGA doesn't claim § 106.33 is invalid.

suggest," *Dubin v. United States*, 599 U.S. 110, 121 (2023)—that § 1681(a) allows some sex distinctions, including to preserve traditional sex-specific privacy. In two ways, section 1686 shows that SAGA is not likely to succeed on its Title IX claim.

First, § 1686 shows that SAGA's statutory interpretation is faulty. SAGA's theory is that any time a school "facially classifies students according to sex assigned at birth," that "is sex discrimination" under Title IX. Dkt. 4.1 at 19; *see id.* 19-23. That reading would ban not only sex-specific restrooms, locker rooms, and showers, but also sex-specific dormitories. Take a male student assigned to live in the boys' dormitory. "[A] but-for test directs [the court] to change one thing at a time," here, the student's sex, "and see if the outcome changes." *Bostock*, 590 U.S. at 656. Change this student's sex, and the assignment is to the girls' dormitory. In SAGA's view, that "facially classifies based on sex" in violation of § 1681(a). Dkt. 4.1 at 19. But everyone agrees dormitories are "living facilities," *see Roe*, 137 F.4th at 918-19, so § 1686 means Title IX can't be read to prohibit sex-separated dormitories. This Court should reject a reading of Title IX that would render sex-specific dormitories unlawful.

Second, even assuming that § 1686 acts as an exception to §1681(a) rather than a construction, the term "living facilities" in § 1686 does not unambiguously exclude restrooms at schools. Contrary to SAGA's claim, Dkt. 4.1 at 22, restrooms at schools are within the text's common-sense meaning, *see Adams*, 57 F.4th at 803 & n.6, and courts give "terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021).

19

As the Eleventh Circuit has recognized, "living facilities" includes school restrooms, and it's not hard to see why. *Adams*, 57 F.4th at 812. Ordinary English speakers could reasonably understand "living facilities" to include restrooms, whether located in dormitories or classroom buildings. "The facilities," after all, is a well-known euphemism for restroom, and one of many uses for the word "living" is to refer to basic biological functions. Indeed, this would not be the only time Congress used "living" in this way. *E.g.* 42 U.S.C. § 1396n(k)(6) (defining "activities of daily living" in the Social Security Act as "tasks such as eating, toileting, grooming, dressing, bathing, and transferring.").

SAGA cannot show that school restrooms are—unambiguously—not "living facilities." SAGA cites isolated definitions for the word "living" and the verb "to live," Dkt. 4.1 at 21, but the relevant term is the compound noun "living facilities." 42 U.S.C. § 1686. "[W]ords together may assume a more particular meaning than those words in isolation." *CC v. AT&T Inc.*, 562 U.S. 397, 406 (2011). The word "facility" has multiple possible meanings. A "facility" can be "something (such as a hospital) that is built, installed, or established to serve a particular purpose." *Facility*, Merriam-Webster. Section 106.33 uses "facility" in this sense. But "facility" can also mean "something that makes an action, operation, or course of conduct easier," such as "facilities for study," and the word also refers to a restroom or toilet. *See Facility*, Merriam-Webster, *supra* (incorporating definition for "lavatory": "a room with conveniences for washing and

usually with one or more toilets"). In 1972 (as now), sex-specific restrooms were the norm in public places. *See Roe*, 137 F.4th at 930, n.15.[5]

But this Court does not need to resolve the meaning of "living facilities" to deny SAGA's injunction. Ambiguity alone destroys SAGA's likelihood of success under the clear-statement rule, and § 1686 is, at most, ambiguous. *See id.* at 930-31. That is as true for school restrooms as it is for dormitories and hotel rooms, which SAGA now accepts are "living facilities" that can be separated based on sex, regardless of gender identity. And in any event, SAGA's failure to discuss the relevant text in context means it has not carried its burden for an injunction pending appeal.

## IV. The Remaining Injunction Factors Favor Defendants.

*Irreparable harm*. SAGA argues for irreparable harm because S.B. 1100 violates its members' equal-protection rights. Dkt. 26. But this argument is incorrect. *See supra* Section II.

SAGA's arguments about its members' mental-health harms are equally unpersuasive. SAGA members will not suffer the alleged irreparable harm because they may use gender-neutral, single-occupancy restrooms. *See SAGA*, 2025 WL 2256884 at

---

[5] Even under SAGA's preferred definition of "living," *see* Dkt. 4.1 at 21, the "overnight lodging on school trips" that SAGA now accepts can be sex-specific, *id.* at 7, would be outside § 1686. SAGA suggests "living facilities" are limited to a person's "home," or the place she "reside[s]." *Id.* at 21. English speakers ordinarily do not refer to a hotel room for an overnight field trip as a person's home. That makes SAGA's interpretation internally inconsistent, as well as incomplete.

*11. When the challenge was to a gender-identity-based bathroom policy, this Court said a single-user option was sufficient for students who feared sharing restrooms with the opposite sex. *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1225 (9th Cir. 2020). SAGA cannot be irreparably harmed by the very accommodation that sufficed for the opposite policy. And as the single-occupancy restrooms are used by both transgender and nontransgender students, using such restrooms does not "out" transgender students. D. Ct. Dkt. 90-2 ¶ 6. Moreover, using single-occupancy restrooms is, from a medical standpoint, the best option for transgender-identifying students. D. Ct. Dkt. 90-5 ¶¶ 35, 40. Thus, SAGA will not suffer irreparable harm without an injunction.

*Balance of harms and public interest.* "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). SAGA's arguments also ignore the very real harm that students' use of multi-occupancy restrooms for the opposite sex may inflict—particularly bodily exposure. *Supra* Section II. Any alleged injury that SAGA or its members could suffer by using a single-occupancy restroom, or a multi-occupancy restroom that corresponds to their sex, presents a far lesser harm than the harms to be suffered by other students who would have their constitutional right to bodily privacy violated.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion.

Dated: August 21, 2025

Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

/s/ Alan M. Hurst

JOHN J. BURSCH
LINCOLN DAVIS WILSON
NATALIE D. THOMPSON
MATHEW W. HOFFMANN
JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwison@ADFlegal.org
nthompson@ADFlegal.org
mhoffmann@ADFlegal.org
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

ALAN M. HURST
Solicitor General
MICHAEL A. ZARIAN
Deputy Solicitor General
GADER WREN
Assistant Solicitor General

JAMES E. M. CRAIG
Chief, Civil Litigation And
Constitutional Defense
DAVID J. MYERS
Deputy Attorney General

OFFICE OF THE IDAHO
ATTORNEY GENERAL
700 W. Jefferson St.
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov

*Counsel for State Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Response in Opposition to Motion complies with the limitation of Circuit Rules 32-3 and 27-1 because it contains 5,530 words. This Response in Opposition to Motion complies with the typeface and the type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.


/s/ *Alan M. Hurst*
Alan M. Hurst

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/ *Alan M. Hurst*
Alan M. Hurst